UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

| | |
|---|---|
| IN RE: | Chapter 11 |
| 609 5TH AVE OWNER LLC, | CASE NO.: 1:26-bk-11420 |
| Debtor. | Judge: Phillip Bentley |

---------------------------------------------------------------X
609 5TH JUNIOR MEZZ LLC,

Plaintiff,

-against-

GW ASSETS FZE,

Defendant.

---------------------------------------------------------------X

## ADVERSARY COMPLAINT

609 5TH JUNIOR MEZZ LLC, as Plaintiff herein, complains of Defendants GW ASSETS FZE (“GW” or “Defendant”), as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. sections 157 and 1334 and the standing order of the United States District Court for the Southern District of New York, referring all bankruptcy cases filed herein and all matters arising in and under said cases and related thereto the Bankruptcy Judges of this District, as the action arises in and under and/or relates to the instant Chapter 11 bankruptcy case of the Debtor.

## PARTIES

2. 609 5TH JUNIOR MEZZ LLC (“Plaintiff”) is a Limited Liability Company organized and existing under the laws of the State of New York.

3. Plaintiff's members are 609 5th Member LLC ("609 5th Member") and 609 5th Manager LLC ("609 5th Manager").

4. 609 5th Member is a Limited Liability Company organized and existing under the laws of the State of New York.

5. 609 5th Manager is a Limited Liability Company organized and existing under the laws of the State of New York.

6. 609 5th Member and 609 5th Manager each have a 50% interest in Plaintiff.

7. Plaintiff is the sole member of 609 Fifth Partners LLC ("609 Fifth Partners").

8. 609 Fifth Partners is a Limited Liability Company organized and existing under the laws of the State of New York.

9. 609 Fifth Partners is the sole member of 609 5th Ave Owner LLC ("609 5th Ave Owner").

10. 609 5th Ave Owner is a Limited Liability Company organized and existing under the laws of the State of New York.

11. 609 5th Ave Owner is the owner of the property known as the Upper Unit at 609/Fifth Condominium, 609 Fifth Avenue, New York, New York, designated on the New York County Tax Map as Block: 1284 Lot: 1002 ("Subject Property").

12. GW is a United Arab Emirates free zone establishment.

## GENERAL ALLEGATIONS

### The Valley Bank Loan

13. By a deed dated June 15, 2022, 609 5th Ave Owner purchased the Subject Property. The deed was recorded in the Office of the City Register, County of New York on June 28, 2022, as CRFN: 2022000254813.

14. 609 Fifth Partners executed a Credit Agreement dated June 15, 2022 in the original principal amount of $80 million (the "Valley Loan") in favor of Valley National Bank and BADF 609 Fifth Avenue LLC (collectively, the "Senior Lenders").

15. The Senior Lenders recorded a mortgage, evidencing the Valley Loan, on the Subject Property pursuant to a Consolidation, Modification and Extension Agreement ("CEMA"). Said CEMA was recorded in the Office of the City Register, County of New York on June 28, 2022, as CRFN: 2022000254817 ("Valley Loan").

16. To further entice Valley to make the Valley Loan, 609 5th Ave Owner executed an assignment of leases and rents ("ALR"). Said ALR was recorded in the Office of the City Register, County of New York on June 28, 2022, as CRFN: 2022000254818.

17. Pursuant to the Valley Loan, the ownership of the mortgagor, whether directly or indirectly, cannot be changed without the prior written consent of Valley.

**<u>The Mezzanine Loan</u>**

18. On or about November 18, 2025, Plaintiff, as obligor, assumed a loan in the sum of $15,373,614.26 from Defendant by a Mezzanine Promissory Note ("Mezz Note"). The maturity date of the Mezz Note was December 15, 2025. Attached hereto as **Exhibit A** is a true and correct copy of the Mezz Note.

19. On November 18, 2025, Plaintiff also executed a Mezzanine Loan Agreement with GW as Lender (the "Loan Agreement"). Attached hereto as **Exhibit B** is a true and correct copy of the Loan Agreement.

20. Additionally, Plaintiff executed a Mezzanine Pledge and Security Agreement ("Pledge Agreement"). Attached hereto as **Exhibit C** is a true and correct copy of the Pledge Agreement.

21. Pursuant to the Pledge Agreement, Plaintiff pledged its 100% membership interest in 609 Fifth Partners, which is the sole member of 609 5th Ave Owner.

22. Pursuant to the Pledge Agreement, all notices are to be sent in compliance with Section 11.6 of the Loan Agreement.

23. Pursuant to the Loan Agreement Section 11.6:

> All notices, demands, requests, consents, approvals or other communications (any of the foregoing, a "Notice") required, permitted, or desired to be given hereunder shall be in writing and delivered (i) by hand or (ii) by reputable overnight commercial courier, in each case addressed to the party to be so notified at its address hereinafter set forth or to such other address as such party may hereafter specify in accordance with the provisions of this Section 11.6. Any Notice shall be deemed to have been received: (a) on the date of delivery by hand if delivered prior to 5:00 p.m. (New York City time) on a Business Day (otherwise on the next Business Day), or (b) on the next Business Day after sent by an overnight commercial courier, in each case addressed to the parties as follows:
>
> If to Lender: GW ASSETS FZE
> P2-ELOB Office# E-27F-20
> Hamriya Free Zone
> Sharjah, UAE
>
> with a copy to: Greenspoon Marder LLP
> 1345 Avenue of the Americas, Suite 2200
> New York, New York 10105
> Attention: Mark S. Fawer, Esq.
> Email: mark.fawer@gmlaw.com
>
> If to Borrower: c/o TopRock Holdings
> 1330 Avenue of the Americas, Suite 7008
> New York, NY 10019
> Attention: Uri Mermelstein and Iosif Yushuvayev
> Email: uri@toprockholdings.com;
> joseph@toprockholdings.com
>
> with a copy to: Marans Newman Tsolis & Nazinitsky LLC
> 29 Broadway, Suite 2400
> New York, New York 10006
> Attention: Jason Nazinitsky, Esq.
> Email: jnazinitsky@mntnlaw.com

24. A Mezzanine Guaranty of Recourse Obligations was also executed on November 18, 2025 by Uri Mermelstein and Iosif Yushuvayev (the "Guarantors"). Attached hereto as **Exhibit D** is a true and correct copy of the Mezzanine Guaranty of Recourse Obligations.

25. An Omnibus Loan Modification and Extension Agreement executed, with Rudolf Abramov, Iosif Abramov, Uri Mermelstein, and Iosif Yushuvayev as guarantors, extending the maturity date to June 15, 2026 (the "Loan Modification"). Attached hereto as **Exhibit E** is a true and correct copy of the Loan Modification. (The "Mezz Note", the "Pledge Agreement", and the "Loan Agreement", the "Mezzanine Guaranty of Recourse Obligations", and the "Loan Modification" are collectively referred to as the "Mezz Loan").

26. Prior to the maturity of the Mezz Note, Plaintiff began discussions with Defendant regarding an extension, a modification or a forbearance for the Mezz Note. While terms were discussed and agreed upon in principle, Defendant failed to provide terms of the proposed settlement in writing.

27. The parties were unable to reach an agreement.

**Defendant's Sale of Plaintiff's Membership Interest Was Not Commercially Reasonable**

28. On March 18, 2026, Plaintiff filed for bankruptcy imposing an automatic stay on any action Defendant could take towards enforcing its rights under the Mezz Note and other documents.

29. By an order dated May 5, 2026, the bankruptcy court dismissed Plaintiff's bankruptcy.

30. Upon the dismissal of the bankruptcy, Defendant scheduled a sale of Plaintiff's membership interest in 609 Fifth Partners to be held on May 19, 2026, only two (2) weeks after the dismissal of the bankruptcy (the "Sale").

31. Pursuant to the terms of the Loan Agreement, notice was to be provided to Plaintiff by overnight mail. Upon information and belief, Plaintiff did not receive the notice of the Sale (the "Notice") and terms of the Sale (the "Terms of Public Sale") until May 13, 2026, only six days prior to the Sale.

32. Pursuant to the Terms of Public Sale, all bidders were required to:

i. have cash to close;
ii. conduct their own due diligence on the Valley loan. A loan that is for $80,000,000.00 with hundreds of pages of documentation;
iii. to execute a confidentiality agreement;
iv. to review all the loan documents of the Mezz Loan that include hundreds of pages;
v. to determine the outstanding taxes, recording fees, and all other violations that may be recorded against the Subject Property

33. Bidders were also required to submit a $50,000.00 deposit and provide sufficient proof of their qualifications to close that is to Defendant's satisfaction by no later than May 15, 2026.

34. Given the delay in receiving the notice of sale, Plaintiff was only given two (2) days to comply with the pre-bidding requirements.

35. In addition to the aforementioned pre-requisites, under the Terms of Public Sale issued by Defendant, Defendant maintained the right to, after the auction, reject all bids received in the auction and reschedule the auction without publishing the new date of the auction. Placing a bid on an asset valued at over $250 million dollars requires a substantial investment of time and resources, such as conducting financial and legal due diligence, preparing and analyzing business projections, and obtaining financing.

36. Furthermore, any prospective bidder with sufficient time to conduct due diligence into the Valley Loan would recognize that the Loan would be in immediate default upon closing, as the Sale would effect a change in ownership of 609 5th Ave Owner.

37. No independent, non-collusive potential bidder would incur those costs knowing that if they win the auction, Defendant reserved the right to simply cancel the auction and refuse to sell the property to the winning bidder. Also, no prospective bidder would agree to take the Subject Property knowing the Valley Loan would immediately be in default upon the transfer of the membership interest from the sale.

38. Therefore, Defendant's Sale pursuant to the Pledge and Security Agreement was not commercially reasonable.

**COUNT I – DECLARATORY JUDGMENT**

39. Plaintiff repeats and re-alleges all of the foregoing paragraphs of the Complaint as though fully set forth herein.

40. There is a substantial and continuing controversy between Plaintiff and the Defendant that is real and immediate, and which creates an immediate and definite threat of injury to Plaintiff, because Defendant is in the process of marketing the Subject Property for sale. However, Defendant has no legal right or authority to do so.

41. Plaintiff and Defendant disagree over whether Defendant has the legal right and authority to transfer ownership of 609 Fifth Partners, 609 5th Ave Owner, or the Subject Property.

42. Plaintiff and Defendant have adverse legal interests concerning their rights to 609 Fifth Partners and 609 5th Ave Owner because the parties dispute whether Defendant has the legal right and authority to transfer ownership of the entities.

43. Plaintiff will be damaged by the conduct of Defendant because it will lose its substantial equity interest in the Subject Property and will be further damaged because it will cause business partners, employees, and potential investors to doubt Plaintiff's ownership of 609 Fifth Partners and 609 5th Ave Owner. Such doubt will cause Plaintiff enormous financial damage.

44. For this reason, Plaintiff brings this action for declaratory judgment and seeks a declaration that: (1) the Sale was conducted in a commercially unreasonable manner; (2) the Sale has not yet been concluded and must be rescheduled and conducted on commercially reasonable terms; (3) the Terms of Public Sale were commercially unreasonable as outlined herein; and (4) Defendant does not have the legal authority to transfer ownership of the 609 Fifth Partners and 609 5th Ave Owner to any third party until a determination is made in this adversary proceeding.

**COUNT II – VIOLATION OF N.Y. U.C.C. § 9-610**

45. Plaintiff repeats and re-alleges all of the foregoing paragraphs of the Complaint as though fully set forth herein.

46. The Pledge Agreement states that any action against Defendant arising out of or relating to the Pledge Agreement or the other Loan Documents shall be governed by the law of the State of New York.

47. Section 9-610 of the N.Y. U.C.C. states that "Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable."

48. The Defendant's disposition method, timing, and Terms of Public Sale were not commercially reasonable and fell below commercially reasonable standards.

49. The Terms of Public Sale were intentionally designed to discourage independent bidders and ensure that there were no independent, non-collusive bidders bidding at the Sale, thereby ensuring that Defendant could acquire the Plaintiff's membership interests in 609 Fifth Partners on its own account, below-market price that is substantially less than the value of the 609 Fifth Partners.

50. Additionally, Defendant's conduct leading up to the Sale as described herein, such as the imposition of unreasonable documentation requirements with unreasonable deadlines, was commercially unreasonable and had the intent and effect of discouraging independent, non-collusive potential bidders.

51. Defendant's conduct in not timely sending notice to Plaintiff, imposing unrealistic expectations on potential bidders in a shortened timeframe to conduct due diligence on a property worth more than $250 million was commercially unreasonable.

52. As a result of Defendant's violation of Section 9-610 of the N.Y. U.C.C., Plaintiff has suffered damages, including but not limited to, the loss of the value of the 609 Fifth Partners, the difference between the amount for which the 609 Fifth Partners purportedly sold at the Sale and the amount for which the Subject Property would have sold had Defendant conducted a Sale of the 609 Fifth Partners that was commercially reasonable.

53. Defendant also caused damage to Plaintiff's reputation, and damage to relations with Plaintiff's employees, customers, vendors, lenders and investors.

54. Pursuant to N.Y. U.C.C. 9-625, Defendant is liable for damages in the amount of any loss caused by failure to comply with Article 9, including, but not limited to, loss from debtor's inability to obtain or increased costs of alternative financing.

55. Plaintiff is also entitled to actual damages as a result of Defendant's violation of Article 9 measured by: (1) diminution in value of pledged interest due to improper disposition, (2) lost opportunity to redeem, (3) lost opportunity to refinance, or (4) other measurable losses.

56. In addition, pursuant to N.Y. U.C.C. 625, Plaintiff also seeks permanent injunctive relief restraining Defendant from attempting to transfer ownership of the 609 Fifth Partners and 609 5th Ave Owner to any other individual or entity.

**COUNT III – VIOLATION OF N.Y. U.C.C. § 9-611**

57. Plaintiff repeats and re-alleges all of the foregoing paragraphs of the Complaint as though fully set forth herein.

58. Defendant failed to give at least ten days' notice before disposition of the collateral pledged by Plaintiff in violation of N.Y. U.C.C. 9-611.

59. The requisite parties as set forth in the Mezz Loan were not given notice before disposition of the collateral.

60. In addition, upon information and belief, notice was not given to the guarantors of the Mezz Loan.

61. The abbreviated notice period prejudiced Plaintiff's ability to redeem, arrange financing, or explore alternatives to prevent a sale of the collateral.

**COUNT IV – VIOLATION OF N.Y. U.C.C. 9-612**

62. Plaintiff repeats and re-alleges all of the foregoing paragraphs of the Complaint as though fully set forth herein.

63. Defendant filed to send notification sent at least 10 days before selling the membership interest in violation of N.Y. U.C.C. 9-612.

64. Defendant's failure constituted a failure of the safe harbor for adequate timing.

65. The abbreviated notice period prejudiced Plaintiff's ability to redeem, arrange financing, or explore alternatives to avoid the sale of the membership interests.

**COUNT V – BREACH OF CONTRACT**

66. Plaintiff repeats and re-alleges all of the foregoing paragraphs of the Complaint as though fully set forth herein.

67. Plaintiff and Defendant entered into express written contracts.

68. By the aforementioned conduct, Defendant breached its obligations under the Mezz Loan.

69. As a result of Defendant's breaches of the Mezz Loan, Plaintiff has been damaged.

## COUNT VI – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

70. Plaintiff repeats and re-alleges all of the foregoing paragraphs of the Complaint as though fully set forth herein.

71. By the improper manner in which it conducted the Sale, and by failing to give notice pursuant to Section 11.6 of the Loan Agreement, Defendant breached its duty of good faith and fair dealing to Plaintiff.

72. As a result of Defendant's breach of its duty of good faith and fair dealing, Plaintiff has been damaged.

## COUNT VII – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

73. Plaintiff repeats and re-alleges all of the foregoing paragraphs of the Complaint as though fully set forth herein.

74. Defendant acted arbitrarily, irrationally, or in bad faith in exercising contractual rights or discretion.

75. The Pledge Agreement granted Defendant the right to dispose of the collateral (Plaintiff's 100% membership interest) upon default, but this discretion is not absolute and must be exercised in good faith and commercially reasonably.

76. Defendant accelerated the Mezz Loan following Plaintiff's bankruptcy filing and proceeded to sell the membership interest without complying with UCC § 9-610(b)'s requirement of commercial reasonableness.

77. Defendant also acted in bad faith during the negotiations to try and resolve the default by agreeing to terms but failing to put them into writing despite multiple requests by Plaintiff, its representatives, agents and/or the Mezz Loan guarantors.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court grant judgment in favor of Plaintiff and against GW ASSETS FZE as follows:

A. On the First Cause of Action, for a Declaratory Judgment (1) the Sale was conducted in a commercially unreasonable manner; (2) the Sale has not yet been concluded and must be rescheduled and conducted on commercially reasonable terms; (3) the Terms of Public Sale were commercially unreasonable as outlined herein; and (4) Defendant does not have the legal authority to transfer ownership of the 609 Fifth Partners and 609 5th Ave Owner to any third party until a determination is made in this adversary proceeding.;

B. On the Second Cause of Action, that GW ASSET FZ conduct was in violation of 9-610 of the N.Y. U.C.C.;

C. On the Third Cause of Action, that GW ASSET FZ conduct was in violation of 9-611 of the N.Y. U.C.C.;

D. On the Fourth Cause of Action, that GW ASSET FZ conduct was in violation of 9-612 of the N.Y. U.C.C.;

E. On the Fifth Cause of Action, that GW ASSET FZ breach the express written agreements with Plaintiff;

F. On the Sixth Cause of Action, that GW ASSET FZ breached its duty of good faith and fair dealing with Plaintiff;

G. On the Seventh Cause of Action, that GW ASSET FZ breach the implied covenant of good faith and fair dealing with Plaintiff;

H. That Plaintiff be awarded Attorneys' Fees, Costs and Disbursements for this Action; and

I. Such other relief as the Court deems just, equitable and proper.

Dated: New York, New York
August 5, 2026

*/s/Danielle Light*___
Danielle P. Light, Esq.