Joshua H. Epstein
Massimo Giugliano
Adam M. Levy
**DAVIS+GILBERT LLP**
1675 Broadway
New York, NY 10019
T: (212) 468-4800
jepstein@dglaw.com
mgiugliano@dglaw.com
alevy@dglaw.com

*Attorneys for Defendant GW Assets FZE*

**Hearing Date: November 10, 2026 at 10:00 a.m. (ET)**
**Objection Deadline: October 23, 2026**
**Reply Deadline: October 30, 2026**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>609 5th AVE OWNER LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-11420 (PB)<br><br>(Jointly Administered) |
| 609 5th JUNIOR MEZZ LLC,<br><br>Plaintiff,<br><br>v.<br><br>GW ASSETS FZE,<br><br>Defendant. | Adv. Pro. No. 26-01074 (PB) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANT GW ASSETS FZE'S MOTION TO DISMISS COMPLAINT**

[1] The debtors in these chapter 11 cases, along with the last four (4) digits of their federal tax identification number, are: 609 5th Ave Owner LLC (7430); and 609 Fifth Partners LLC (9976) (together, the "Debtors"). Debtors' principal place of business is P2-ELOB Office #E-27F20, Hamriya Free Zone, Sharjah, UAE.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii

ARGUMENT ..... 1

I. PLAINTIFF'S DECLARATORY JUDGMENT CLAIM (COUNT I) FAILS BECAUSE THE UCC SALE CLOSED AND THE CLAIM IS DUPLICATIVE ..... 1

A. Plaintiff's "Closing Conditions" Argument is Meritless ..... 1

B. The Remainder of Count I Fails as Duplicative of the UCC Claims ..... 4

II. NO INJUNCTION CAN RESTRAIN A COMPLETED UCC SALE (COUNT II) ..... 5

A. There is no Ongoing Disposition to Restrain ..... 5

B. Plaintiff Fails to Meet the Permanent Injunctive Relief Standard ..... 6

III. THE BREACH OF CONTRACT CLAIM (COUNT V) CONTINUES TO FAIL ..... 7

IV. THE IMPLIED COVENANT CLAIMS (COUNTS VI AND VII) MERELY REPACKAGE PLAINTIFF'S CONTRACT AND UCC CLAIMS ..... 8

V. THE UCC CLAIMS (COUNTS II THROUGH IV) FAIL AS A MATTER OF LAW ..... 8

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Cases**

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
57 F.4th 85 (2d Cir. 2023) .......... 5

*Atlas MF Mezzanine Borrower, LLC v. Macquarie Tex. Loan Holder LLC*,
174 A.D.3d 150 (1st Dep't 2019) .......... 1, 4, 8

*Bill's Birds, Inc. v. Trademarketing Res. Inc.*,
920 F. Supp. 2d 357 (E.D.N.Y. 2013) .......... 6

*Blott v. Countrywide Home Loans, Inc.*,
No. 654549/2012, 2013 N.Y. Misc. LEXIS 2417
(Sup. Ct. N.Y. Cnty. June 5, 2013) .......... 9

*Clean Air Car Serv. & Parking Branch Three, LLC v. Operr Plaza, LLC*,
No. 24-CV-5445 (FB), 2025 U.S. Dist. LEXIS 77490
(E.D.N.Y. Apr. 23, 2025) .......... 4

*Daol Rexmark Union Station LLC v. Union Station Sole Member, LLC*,
772 F. Supp. 3d 373 (S.D.N.Y. 2025) .......... 4, 7

*Deeton v. Ruckus 85 Corp.*,
243 A.D.3d 436 (1st Dep't 2025) .......... 4

*DeRosa v. Chase Manhattan Mortg. Corp.*,
10 A.D.3d 317 (1st Dep't 2004) .......... 9, 10

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003) .......... 4, 5

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .......... 6

*Ime Watchdog, Inc. v. Beiben*,
No. 25-CV-10218 (VSB) (RFT), 2026 U.S. Dist. LEXIS 237622
(S.D.N.Y. July 30, 2026) .......... 6

*LaSalle Nat'l Bank v. Ernst & Young LLP*,
285 A.D.2d 101 (1st Dep't 2001) .......... 3

*Mancini v. UBS AG*,
831 F. Supp. 3d 284 (S.D.N.Y. 2026) .......... 7, 8, 10

*Martinez v. Staten Island Univ. Hosp.*, No. 19-CV-02672 (CBA)(RER), 2020 U.S. Dist. LEXIS
271478 (E.D.N.Y. June 19, 2020) .......... 10

*Mejia v. High Brew Coffee Inc.*,
No. 1:22-CV-03667-LTS, 2024 U.S. Dist. LEXIS 180006
(S.D.N.Y. Sept. 30, 2024) .......... 1

*Reifer v. Westport Ins. Corp.*,
751 F.3d 129 (3d Cir. 2014) .......... 5

*Walsh v. Ocwen Loan Servicing, LLC*,
217 A.D.3d 802 (2d Dep't 2023) .......... 4

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) .......... 1

*Zwicker v. Emigrant Mortg. Co.*,
91 A.D.3d 443 (1st Dep't 2012) .......... 9

**Statutes**

Fed. R. Civ. P. 12(b)(6) .......... 1

Fed. R. Civ. P. 8(d) .......... 6, 8

N.Y. U.C.C. § 9-610 .......... 8

N.Y. U.C.C. § 9-610(c)(1) .......... 4

N.Y. U.C.C. § 9-611(a)(2) .......... 10

N.Y. U.C.C. § 9-612(b) .......... 10

N.Y. U.C.C. § 9-617(a)(1) .......... 3

N.Y. U.C.C. § 9-625(a) .......... 5

N.Y. U.C.C. § 9-625(b) .......... 4, 5, 6, 8

N.Y. U.C.C. § 9-625(c)(1) .......... 10

**Other Authorities**

Permanent Editorial Board for the Uniform Commercial Code .......... 4

Defendant GW Assets FZE submits this reply memorandum of law in further support of its motion (the "Motion" or "Mot.")[2] to dismiss the Complaint with prejudice.

## ARGUMENT

### I. PLAINTIFF'S DECLARATORY JUDGMENT CLAIM (COUNT I) FAILS BECAUSE THE UCC SALE CLOSED AND THE CLAIM IS DUPLICATIVE

#### A. Plaintiff's "Closing Conditions" Argument is Meritless

The Motion made clear that New York law does not permit a debtor to unwind a completed UCC disposition, and Plaintiff's Declaratory Judgment Claim therefore fails as a matter of law. *See* Mot. at 12–14, 23; *Atlas MF Mezzanine Borrower, LLC v. Macquarie Tex. Loan Holder LLC*, 174 A.D.3d 150 (1st Dep't 2019).

Plaintiff's Opposition does not (because it cannot) contest this. Instead, Plaintiff "pivots," arguing that its Declaratory Judgment Claim should survive because the UCC Sale's "closing conditions" were not satisfied and thus the Sale was "never consummated." Opp. at 1, 3–6. This is Plaintiff's principal argument in opposition to the Motion. It is meritless, "supported" by Plaintiff's selective, and deliberately misleading, quotation of the Terms of Public Sale (the "Terms").[3] As set forth below, Plaintiff's argument cannot save its Declaratory Judgment Claim from the operation of Rule 12(b)(6).

*First*, Plaintiff misrepresents the Terms, which do not support its argument. It relies on Section 3(c) of the Terms, which provides that the sale will be consummated upon payment "as

---

[2] Unless otherwise noted, capitalized terms shall have the meaning set forth in the Motion. The terms "Opposition" or "Opp." shall refer to Plaintiff's memorandum of law, dated October 22, 2026, in opposition to the Motion.

[3] At the outset, because the "never consummated" theory does not appear in the Complaint, the Court need not reach it. Nor should the Court grant Plaintiff's one-sentence request for leave to amend, *see* Opp. at 25, which provides no proposed amended pleading. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (observing that "a party is not entitled to amend its complaint through statements made in motion papers") (citation omitted). In any event, amendment would be futile. Plaintiff's theory is foreclosed by the plain terms of the documents on which Plaintiff relies. *See Mejia v. High Brew Coffee Inc.*, No. 1:22-CV-03667-LTS, 2024 U.S. Dist. LEXIS 180006, at *18–19 (S.D.N.Y. Sept. 30, 2024) (denying leave to amend as futile).

otherwise required to satisfy all of the requirements of Senior Lender in connection with the sale . . . including, without limitation, the repayment in full of the Senior Loan in the outstanding principal amount of $71,800,000." Opp. at 3 (citing Mot. at 8 n.13). According to Plaintiff, because the Senior Loan was not repaid, the "disposition has not been completed." Opp. at 6. Incredibly, Plaintiff fails to inform the Court that two sentences later, the Terms state: "**If the prevailing bidder is [Defendant], then the foregoing requirements will not apply**," and payment "**may be made by applying against the purchase price the amounts due to the Secured Party**." Fawer Decl. Ex. 2 at ¶ 3(c) (emphases added). It is uncontested that Defendant was the prevailing bidder, so the "closing conditions" upon which Plaintiff places so much emphasis did not apply.[4] In other words, Plaintiff's argument is utter nonsense, and represents a troubling attempt to mislead the Court.

*Second*, the Opposition contends that the UCC Sale did not close because the senior lenders did not consent to a change in control of the Debtors. This is baseless. *See* Opp. at 3–4, 6. Nothing in the Terms makes senior lender consent a condition precedent to Defendant's acquisition of the collateral; to the contrary, Section 3(c) expressly provides that the senior lender requirements "will not apply" where Defendant is the prevailing bidder. Fawer Decl. Ex. 2 at ¶ 3(c). And Plaintiff identifies no provision of the Senior Loan documents that conditions a UCC disposition's effectiveness on such consent. *See* Compl. ¶ 17. At most, a change in control without consent could constitute an event of default under the Senior Loan as between the senior lenders and the borrower, 609 5th Ave Owner LLC — which is how Plaintiff itself characterizes it. *See* Opp. at 6 (asserting transfer "would place the Valley Loan in immediate default").[5] A

[4] Plaintiff effectively concedes this, acknowledging that the payoff condition in Section 3(c) applied only "if the purchaser was a third party." Opp. at 6.

[5] Defendant does not concede any such default, which is not an issue before the Court.

potential default under someone else's loan does not render the UCC Sale ineffective. And any remedy for such a default belongs to the senior lenders, not Plaintiff, a stranger to the Senior Loan that lacks standing to enforce it. *See LaSalle Nat'l Bank v. Ernst & Young LLP*, 285 A.D.2d 101, 108 (1st Dep't 2001) ("A non-party may sue for breach of contract only if it is an intended, and not a mere incidental, beneficiary . . . ."). Critically, the senior lenders themselves describe Defendant as having "foreclosed on the equity of Debtor Member" and "t[aken] control of Debtor Member," and they have not contested the UCC Sale's consummation. *See* Mot. to Determine Single Asset Real Estate Status, ECF No. 26, at 2 n.2.[6]

*Third*, contrary to Plaintiff's self-serving rhetoric, the completion of the UCC Sale is not "a disputed question of fact." Opp. at 6–7. Whether the UCC Sale can be unwound because a purported condition in the Terms was not satisfied is a question of law resolvable on the documents the Complaint incorporates by reference. *See* Mot. at 8 n.10, 10–11. Section 3(c)'s closing requirements did not apply to Defendant, and the UCC Sale became final upon the Auctioneer's announcement of the highest bid. *See* Fawer Decl. Ex. 2 at ¶ 3(c). Defendant succeeded to Plaintiff's rights in the collateral by operation of Article 9 and the loan documents.[7]

*Fourth*, the Opposition confirms that the UCC Sale was completed.[8] Plaintiff concedes that "money damages presuppose a completed disposition," Opp. at 10, and its UCC Claims seek precisely such damages, measured by the price the interests "sold at the Sale." Compl. ¶ 52.

---

[6] Unless otherwise noted herein, references to "ECF No. __" refer to CM/ECF entries under Case No. 26-11420 (PB).

[7] *See* N.Y. U.C.C. § 9-617(a)(1) (disposition "transfers to a transferee for value all of the debtor's rights in the collateral"); Compl. Ex. C (Consent of Sole Member) at ¶ (b) (admission "shall be automatic upon the conclusion of a disposition pursuant to the [UCC] and shall not require any further action on the part of [609 Fifth Partners] or any other person"); Compl. Ex. C (Pledge Agreement) at § 7(d)(iv) (Defendant may purchase at public sale and "thereafter hold the same absolutely, free from any claim or right of whatsoever kind . . . of [Plaintiff]").

[8] *See* Compl. ¶¶ 38 (alleging "Defendant's Sale pursuant to the Pledge and Security Agreement was not commercially reasonable"), 58 (alleging Defendant failed to give notice "***before disposition*** of the collateral pledged

*Finally*, while Plaintiff desperately tries to recharacterize its Declaratory Judgment Claim, it remains a request to rescind a completed UCC sale. Plaintiff does not dispute the governing rule under *Atlas*: once a disposition of collateral is complete, the debtor's remedy is damages under N.Y. U.C.C. § 9-625(b), not declaratory or injunctive relief undoing the sale. *See* Opp. at 5 (citing *Atlas*, 174 A.D.3d at 162–63). The rule applies even where, as in *Atlas*, the debtor alleges the sale was commercially unreasonable, rigged and collusive, and courts apply it consistently. *See, e.g.*, *Deeton v. Ruckus 85 Corp.*, 243 A.D.3d 436, 437 (1st Dep't 2025);[9] *Walsh v. Ocwen Loan Servicing, LLC*, 217 A.D.3d 802, 804 (2d Dep't 2023); *Daol Rexmark Union Station LLC v. Union Station Sole Member, LLC*, 772 F. Supp. 3d 373, 407–09 (S.D.N.Y. 2025); *Clean Air Car Serv. & Parking Branch Three, LLC v. Operr Plaza, LLC*, No. 24-CV-5445 (FB), 2025 U.S. Dist. LEXIS 77490, at *9 (E.D.N.Y. Apr. 23, 2025). Plaintiff purports to distinguish these cases on the basis that the sales there were "completed." Opp. at 6–8. But so was the UCC Sale here, and thus Plaintiff's contention that *Atlas*'s policies are "not implicated" is just wishful thinking. Opp. at 8.[10]

### B. The Remainder of Count I Fails as Duplicative of the UCC Claims

Plaintiff next maintains that Defendant applies the "wrong" standard by relying on *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003), and points instead to the

---

by Plaintiff"), 63 (alleging Defendant failed to send notice "***before selling*** the membership interest"), 76 (alleging Defendant "***proceeded to sell*** the membership interest") (emphases added).

[9] Although *Deeton* involved a protected third-party purchaser, *see* Opp. at 6–7, a secured party may purchase at a public sale, N.Y. U.C.C. § 9-610(c)(1), and the Pledge Agreement expressly authorized Defendant to do so. *See* Compl. Ex. C at § 7(d)(iv).

[10] Plaintiff urges the Court to disregard *Atlas* in favor of a non-binding commentary from the Permanent Editorial Board for the UCC, Opp. at 8–9, but identifies no court that has done so, and at least one has declined. *See Clean Air*, 2025 U.S. Dist. LEXIS 77490, at *9–10. In any event, the commentary concludes only that a transferee not acting in good faith takes the collateral subject to the debtor's right of redemption under N.Y. U.C.C. § 9-623, which the debtor may exercise only by satisfying the secured obligations. *See* Light Decl. Ex. B at 3–4. Notably, Plaintiff neither alleges that it has tendered, or can tender, the amounts owed to Defendant nor seeks to redeem the collateral.

expanded set of factors in *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023). Opp. at 9. But *Admiral* did not displace *Dow Jones*. The first two *Admiral* factors — whether the judgment "will serve a useful purpose in clarifying or settling the legal issues involved" and whether it "would finalize the controversy and offer relief from uncertainty" — are the same two *Dow Jones* factors on which Defendant relies. *See* Mot. at 15; *compare Admiral*, 57 F.4th at 99–100, *with Dow Jones*, 346 F.3d at 359.[11] Moreover, a court need only apply the *Admiral* factors "to the extent they are relevant." *Admiral*, 57 F.4th at 99 (citing *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d Cir. 2014)).

Under any formulation of the standard, Count I should be dismissed as duplicative. *First*, the declarations Plaintiff seeks in Count I that the UCC Sale and the Terms were commercially unreasonable are duplicative of Counts II through IV. *See* Mot. at 15–16; *see also* Opp. at 10 (acknowledging that Count I "overlap[s] with facts that the Court must examine under Counts II through IV"). To the extent Plaintiff now relies on its new theory that the UCC Sale never closed, Opp. at 9, that theory is baseless for the reasons set forth above. *See supra* Argument § I.A. *Second*, Plaintiff's contention that money damages under N.Y. U.C.C. § 9-625(b) are inadequate rests on the same flawed theory. *See* Opp. at 10.

## II. NO INJUNCTION CAN RESTRAIN A COMPLETED UCC SALE (COUNT II)

### A. There is no Ongoing Disposition to Restrain

Plaintiff does not dispute that injunctive relief under N.Y. U.C.C. § 9-625(a) is unavailable once a disposition is complete; it argues only that the UCC Sale was not completed,

[11] Indeed, *Dow Jones* already recognized the next three *Admiral* factors, *see* 346 F.3d at 359–60, and *Admiral* repeatedly relied on *Dow Jones* for the "broad . . . discretion" district courts retain to decline declaratory relief. *Admiral*, 57 F.4th at 96, 99–100.

relying on the same misleading argument addressed above. *See* Opp. at 11–12. The injunctive relief claim therefore fails.[12] *See supra* Argument § I.A.

**B. Plaintiff Fails to Meet the Permanent Injunctive Relief Standard**

Plaintiff argues that Defendant cannot rely on *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) (*see* Opp. at 12–15), but it is clearly wrong. Courts routinely apply the *eBay* factors to motions to dismiss, recognizing that injunctive relief may proceed only if the claim "adequately alleges entitlement to the injunctive relief [it] seeks." *See, e.g., Ime Watchdog, Inc. v. Beiben*, No. 25-CV-10218 (VSB) (RFT), 2026 U.S. Dist. LEXIS 237622, at *26 n.4 (S.D.N.Y. July 30, 2026) (recommending dismissal because request for injunctive relief failed to plausibly allege *eBay* factors); *Bill's Birds, Inc. v. Trademarketing Res. Inc.*, 920 F. Supp. 2d 357, 364 (E.D.N.Y. 2013) (finding plaintiffs' injunctive relief claim "fail[ed]" to satisfy the *eBay* factors). The timing of the *eBay* inquiry is irrelevant. Plaintiff's remedy is limited to damages under N.Y. U.C.C. § 9-625(b), and no injunction could issue at any stage.

Regardless, nothing in the Opposition shows Plaintiff meets the *eBay* standard. *See* Mot. at 17. The Opposition's conclusory assertion that Plaintiff's losses are "not readily reducible to money," Opp. at 14, stands in stark contrast to the fact that the Complaint seeks money damages. Further, Rule 8(d)'s allowance for alternative pleading does not displace the substantive requirements for injunctive relief. Plaintiff's appeal to preserving the *status quo*, Opp. at 14, is undercut by its own conduct — had Plaintiff truly believed the sale was pending, it would have sought a temporary restraining order or preliminary injunction when it sued, or during the four

---

[12] Plaintiff's contention that Defendant "is still proceeding" because it is "marketing the Subject Property for sale," Opp. at 12 (quoting Compl. ¶ 40), conflates the UCC Sale with the Debtors' reorganization, which N.Y. U.C.C. § 9-625(a) does not govern. Indeed, the requested injunction would bar Defendant "from attempting to transfer ownership of the 609 Fifth Partners and 609 5th Ave Owner to any other individual or entity." Compl. ¶ 56. That is not a restraint on an Article 9 sale, but a request to freeze the Debtors' reorganization.

weeks between the UCC Sale and the Debtors' chapter 11 filings. Because the UCC Sale was completed, the *Daol Rexmark* court's concerns about debtors undoing completed sales apply here. *See* Mot. at 17–18 (quoting *Daol Rexmark*, 772 F. Supp. 3d at 409). Nor does Plaintiff's offer to 'tailor' the injunction cure its overbreadth. Opp. at 14–15; *see* Mot. at 18.

**III. THE BREACH OF CONTRACT CLAIM (COUNT V) CONTINUES TO FAIL**

*First*, Plaintiff still identifies no Loan Agreement provision that Defendant breached. *See* Mot. at 8, 19. Section 11.6 governs only who receives notice and where, sets no minimum notice period, and Plaintiff concedes it received notice. *See id.*; *see also* Fawer Decl. Exs. 3–4 (FedEx proofs of delivery). The Pledge Agreement does not supply the missing obligation. Plaintiff concedes that Section 7(d)(iv) therein "permits Defendant to dispose of the Collateral after an Event of Default without other notice." Opp. at 16. Section 7(d)(iv) otherwise preserves only "such notice as is required above or by applicable statute and cannot be waived," *id.* — that is, the statutory notice that is the subject of Plaintiff's UCC claims — and Section 9(c) merely requires that notices be given "in accordance with Section 11.6." *See* Opp. at 16–17. Plaintiff's objection to the *timing* of notice is therefore not a contract claim. *See Mancini v. UBS AG*, 831 F. Supp. 3d 284, 293–94 (S.D.N.Y. 2026) (dismissing breach claim where provision did not require particular notice period). Nor can Plaintiff sue for breach of a notice obligation owed to the guarantors, Opp. at 15–16, who received notice anyway. *See infra* Argument § V. *Second*, the Opposition never explains how Plaintiff can sue on a contract it did not perform. *See* Mot. at 18–19. Plaintiff says only that its default does not excuse Defendant's post-default obligations, but again it identifies none that were breached. *See* Opp. at 16. And Plaintiff's sole attempt to distinguish *Atlas* — that the court "did not address a claim premised on specific post-default notice covenants" — fails because there are no such covenants here. *Id.*

## IV. THE IMPLIED COVENANT CLAIMS (COUNTS VI AND VII) MERELY REPACKAGE PLAINTIFF'S CONTRACT AND UCC CLAIMS

The Opposition's three responses on Counts VI and VII fail. *See* Opp. at 17–20. *First*, Plaintiff argues that Count VI may be pleaded alternatively because, if Count V is dismissed, Count VI cannot duplicate it. *Id.* at 18. But Count VI pleads itself as a contract claim, alleging breach "by failing to give notice pursuant to Section 11.6 of the Loan Agreement." Compl. ¶ 71. Rule 8(d) permits alternative theories, not alternative contracts. Further, Count VI's notice and sale-manner theory "merely repackages" Plaintiff's UCC notice and commercial reasonableness claims, which independently warrants dismissal. *See Mancini*, 831 F. Supp. 3d at 297; *Atlas*, 174 A.D.3d at 166. *Second*, Count VII's "bad faith" theory rests on the same below-market-acquisition allegation pled in support of Count II, Compl. ¶¶ 49, 76, and a "bad faith" label does not make a commercial reasonableness claim a distinct implied covenant claim. *See Mancini*, 831 F. Supp. 3d at 297.[13] *Third*, the workout-negotiation theory remains conclusory, *see* Mot. at 20 n.18, and the implied covenant cannot require a modification that the Loan Agreement permits only in a signed writing. *See* Loan Agreement § 11.4.

## V. THE UCC CLAIMS (COUNTS II THROUGH IV) FAIL AS A MATTER OF LAW

As an initial matter, each of the UCC claims presupposes a completed disposition. Compl. ¶¶ 52, 58, 63. Plaintiff cannot maintain that the UCC Sale never concluded, *see supra* Argument § I.A, while seeking damages under N.Y. U.C.C. § 9-625(b) for a disposition that, on its own theory, never occurred. Regardless, the UCC claims fail on their merits.

[13] Plaintiff's efforts to distinguish these cases fail. Plaintiff says *Atlas* involved only a commercially unreasonable sale, Opp. at 19–20, but the *Atlas* borrower likewise alleged that the sale was "rigged" and orchestrated through collusion to deprive it of the collateral, and the implied covenant claim was still dismissed as "premised on the same allegation of a commercially unreasonable sale." 174 A.D.3d at 156, 166. Separately, like the claim in *Mancini*, Count VII here is expressly premised on commercial reasonableness, and the only intent allegation Plaintiff cites is a conclusory assertion in its count under N.Y. U.C.C. § 9-610. *See* Compl. ¶¶ 49, 75–76; Opp. at 20.

*First*, commercial reasonableness and notice may be resolved on a motion to dismiss where the claims are foreclosed by the Complaint and operative documents. *See* Mot. at 21–22 (collecting cases). Plaintiff ignores *Blott v. Countrywide Home Loans, Inc.*, No. 654549/2012, 2013 N.Y. Misc. LEXIS 2417, at *9–10 (Sup. Ct. N.Y. Cnty. June 5, 2013), and distinguishes *Zwicker v. Emigrant Mortg. Co.*, 91 A.D.3d 443, 444 (1st Dep't 2012), and *DeRosa v. Chase Manhattan Mortg. Corp.*, 10 A.D.3d 317, 320–22 (1st Dep't 2004), only because the courts there considered materials outside the complaint. Opp. at 21. The materials here are incorporated by reference or are Plaintiff's own prior bankruptcy filings. *See* Mot. at 8 n.10, 10–11.

*Second*, the Terms were not "designed to exclude independent bidders." Opp. at 22. Plaintiff argues that, "[m]ost fundamentally," the transfer would place the Senior Loan in "immediate default," but identifies no term or provision causing such default. *Id.* (citing Compl. ¶¶ 17, 36–37). In any event, no default would arise if the Senior Loan — approximately $71.8 million, due June 15, 2026 — were repaid at closing of the UCC Sale (as was required for third parties). *See* Mot. at 5, 8 & n.13. And if, as Plaintiff alleges, "no prospective bidder would agree to take the Subject Property knowing the [Senior] Loan would immediately be in default upon the transfer," then Plaintiff could not have suffered any loss "caused by" the Terms or the manner in which Defendant conducted the UCC Sale. *See* Compl. ¶¶ 36–37, 54. Regardless, every challenged term, including Defendant's reserved right to reject bids, had been public since January 2026, when Hilco marketed the sale to more than 20,000 investors, yielding 23 executed NDAs and a third-party bidder registration deposit. Mot. at 8–9. And Plaintiff's counsel conceded those terms "most likely would not be found to have been commercially unreasonable," which is an admission, not a "prediction," Opp. at 22–23, about terms that did not materially change before the May sale. *See* Mot. at 9, 24.

*Third*, Plaintiff's notice arguments fail. Plaintiff does not dispute that it had written notice of the sale and its Terms since January 2026, or that its counsel acknowledged on May 5, 2026 that the sale would proceed promptly after dismissal of Plaintiff's Bankruptcy. *See* Mot. at 6–7, 21. Plaintiff admits receiving the May notice and Terms before the sale, Compl. ¶ 31, and FedEx records show delivery to both Section 11.6 addresses on May 7, 2026 — twelve days before the sale, within N.Y. U.C.C. § 9-612(b)'s safe harbor. *See* Fawer Decl. Exs. 3–4. Plaintiff's evidentiary objections ignore the authority for judicial notice of carrier records and are immaterial given its admitted receipt. *See* Opp. at 24; Mot. at 8 n.11. Plaintiff's reliance on *Mancini*, Opp. at 24, is misplaced, as the secured party there sold collateral before the noticed date, giving only retroactive notice. 831 F. Supp. 3d at 295–96. Here, the sale proceeded on the noticed date after months of advance notice. *See DeRosa*, 10 A.D.3d at 320–22 (affirming dismissal despite notice errors where debtor "ha[d] reason to anticipate" the sale).

*Fourth*, Plaintiff's fallback, that the non-party guarantors were not notified, fails as a matter of law. *See* Opp. at 24. Article 9 permits a person to recover damages only "for its loss." N.Y. U.C.C. § 9-625(c)(1). The right to notice belongs to the person entitled to it, who alone may waive it. *See* N.Y. U.C.C. § 9-611(a)(2). Plaintiff alleges no loss *it* suffered from lack of notice to someone else, so Counts III and IV fail to the extent they rely on it. Regardless, the guarantors — Plaintiff's own principals, Uri Mermelstein and Iosif Yushuvayev, Compl. ¶ 24; Mot. at 4 n.6 — received the May 2026 notice and terms on May 7, 2026 at their Mezzanine Guaranty notice address and through designated counsel. *See* Fawer Decl. Exs. 3–4; Mot. at 8 & n.11. Plaintiff's contrary "information and belief" allegation, Compl. ¶ 60, need not be credited. *See Martinez v. Staten Island Univ. Hosp.*, No. 19-CV-02672 (CBA)(RER), 2020 U.S. Dist. LEXIS 271478, at *20–21 & n.3 (E.D.N.Y. June 19, 2020).

## CONCLUSION

For the foregoing reasons, Defendant GW Assets respectfully requests that this Court dismiss the Complaint in its entirety with prejudice.

Dated: October 30, 2026
New York, New York

**DAVIS+GILBERT LLP**

By: */s/ Massimo Giugliano*

Joshua H. Epstein
Massimo Giugliano
Adam M. Levy
1675 Broadway
New York, NY 10019
T: (212) 468-4800
jepstein@dglaw.com
mgiugliano@dglaw.com
alevy@dglaw.com

*Attorneys for Defendant GW Assets FZE*